## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CRAIG SMITH,                      )
                                  )
        Plaintiff,                )
                                  )
    v.                            )        Civil No. 3:20-cv-00250-SLH
                                  )        Judge Stephanie L. Haines
SMITH TRANSPORT, INC.,            )
                                  )
        Defendant.                )

### OPINION

Plaintiff Craig Smith ("Plaintiff") initiated the instant action by filing a Complaint (ECF No. 1) on December 14, 2020.  Plaintiff alleges that his former employer, Defendant Smith Transport, Inc. ("Defendant"), failed to accommodate him and discriminated against him because of his disability, violating the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12203, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951.

Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 39) which seeks judgment in favor of Defendant on Plaintiff's claims.  For the reasons set forth below, Defendant's Motion for Summary Judgment (ECF No. 39) will be GRANTED.

### I.    Jurisdiction

Subject matter jurisdiction for this lawsuit exists under 28 U.S.C. §§ 1331 and 1367 which collectively provide that "[t]he district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" and "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."   Additionally, because a

substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania, venue is proper under 28 U.S.C. § 1391(b).

## II.   Introduction

### A. Factual Background[1]

Plaintiff began working for the Wells Service Division of Defendant's company on March 14, 2019 (ECF No. 41, ¶ 1).  During Plaintiff's tenure, he worked between 65 and 70 hours per week, and his duties included driving a tanker truck and loading brine water from oil wells (*Id.*, ¶¶ 4-5). While driving for Defendant's company, Plaintiff drove alone (*Id.*, ¶¶ 3, 8).  Although Plaintiff stated that he had "intend[ed] on staying at th[e] company[,]" he resigned after 11 months (ECF No. 41, ¶ 2; ECF No. 49, ¶  60; ECF No. 49-1, Exhibit C at 127:8-9).  Plaintiff maintains he resigned because he suffered from a disability, an allergy to cigarette smoke, but had to drive trucks in which other drivers had smoked (ECF No. 49, ¶¶ 32, 34; ECF No 49-1, Exhibit C at 127:11-14).  According to Plaintiff, his allergy brings about debilitating migraines; one such migraine, along with accompanying high blood pressure, required emergency room hospital treatment while Plaintiff was employed by Defendant (ECF No 41, ¶¶ 7; ECF No. 49, ¶¶ 6, 7, 24, 55; ECF No. 49-1, Exhibit C at 67:3-10).

While Plaintiff was employed by Defendant and not suffering from a migraine, he had no limitations and was able to engage in normal physical activities, including, riding a bike, walking, going to the gym, taking care of himself, performing all daily functions, performing manual tasks, seeing, hearing, eating, sleeping, standing, sitting, lifting, reaching, bending, speaking, breathing, learning, reading, concentrating, thinking, interacting with others, and working (ECF No. 41, ¶¶ 11-15; ECF No. 49, ¶¶ 11-15).  However, Plaintiff contends that, while working for Defendant,

---

[1] The facts set forth in this section are undisputed unless otherwise indicated.

and exposed to cigarette smoke, he became "totally incapacitated, unable to walk, talk, hear, see, work, breathe, or drive" because of migraines (ECF No. 49, ¶¶ 11-15).

Despite contending that he suffered migraines corresponding to an allergy to cigarette smoke, Plaintiff did not: (1) Notify the doctor of his alleged disability, migraines, or allergy when undergoing the physical examination before beginning to work for Defendant; (2) inform anyone during the interview process of the migraines or allergies; or (3) provide documented medical evidence reflecting such a diagnosis (ECF No. 41, ¶¶ 18-20; ECF No. 53, ¶ 34). However, after Plaintiff began working, he informed his supervisors, Greg Shawver and Dominic Fredo, as well as Charles ("Chip") Castello, Director of Safety at the Wells Services Division of Smith Transport at the time, of his alleged disability (ECF 49-1, Exhibit B at 69:1-20; ECF No. 49, ¶ 16; ECF No. 40, p. 11). Defendant made no attempt to verify the alleged allergy but stated that it took steps to accommodate Plaintiff (ECF No. 53, ¶ 42).

After being notified of Plaintiff's allergy, Defendant instituted a new policy where a number of trucks were formally designated as nonsmoking trucks and no smoking signs were placed on the doors (ECF No. 41, ¶ 27; ECF No 49-1, Exhibit B at 36:19-25). Plaintiff was informed that if a non-smoking truck was not available due to the rotation of the drivers and shifts, he was permitted to decline both working his scheduled shift and the corresponding pay (ECF No. 41, ¶ 28). However, this never occurred because in instances when the nonsmoking trucks were unavailable, Plaintiff would work anyway and drive a truck that was designated smoking, rolling the windows down and keeping the air conditioner or heater off (ECF No. 41, ¶ 29). He stated, he "needed to get paid, [and] provide for [his] family"(ECF No. 49-1, Exhibit C at 73:23-74:2).

Plaintiff contends that he ended up driving trucks that were designated as smoking trucks numerous times, and that, on occasion, individuals even smoked in the nonsmoking truck that had

been assigned to him (ECF No. 49-1, Exhibit B at 53:2-5, Exhibit C at 118:5-13; ECF No. 54-3, p. 3).  After informing Castello, Shawver, and Fredo that he believed individuals had smoked in the nonsmoking trucks, Plaintiff filed complaints with the Pennsylvania Department of Health (ECF No. 54-3, pp. 3-6).  On February 4, 2020, Plaintiff resigned after 11 months of working for Defendant, stating in his resignation letter that he could not "continue in good faith and good conscience to work in such a dangerous work environment" (ECF No. 41, ¶ 2; ECF No. 49-1, Exhibit C at 84:17-19).

## B.  Procedural History

After filing a charge with the Equal Employment Opportunity Commission ("EEOC") and receiving a Right to Sue Notice (ECF No. 1, ¶ 6; ECF No. 1-3, Exhibit 2), Plaintiff commenced this action on December 14, 2020, by filing a four-count complaint (ECF No. 1).  Plaintiff raised the following claims against Defendant: (Count I) Failure to accommodate and discrimination in violation of the Americans with Disabilities Act of 1990; (Count II) Disability discrimination in violation of the Pennsylvania Human Relations Act; (Count III) Wrongful discharge in violation of the Pennsylvania Clean Indoor Air Act (CIAA) of 2008; and (Count IV) Violations of the Wage Payment and Collection Law ("WPCL").

On April 2, 2021, following the Court granting the Parties' Joint Stipulation to Extend Time to Respond to Plaintiff's Complaint (ECF Nos. 6 and 7), Defendant filed a Partial Motion to Dismiss for Failure to State a Claim (ECF No. 8) accompanied by a Brief in Support (ECF No. 9).  On April 23, 2021, Plaintiff filed a Response and Brief in Opposition (ECF Nos. 11 and 12) to which Defendant filed a Reply (ECF No. 13) on May 3, 2021.

On July 21, 2022, the Court granted Defendant's Partial Motion to Dismiss Count III of Plaintiff's Complaint, holding that Plaintiff's claim for wrongful termination was preempted by

statutory remedies under the ADA and PHRA (ECF No. 26).  On January 26, 2023, Plaintiff stipulated to the dismissal of Count IV of his Complaint with Prejudice (ECF No. 37), and the Court entered an order to that end the same day (ECF No. 38).  Thus, only Plaintiff's claims under the ADA and PHRA, Counts I and II, remain.

On January 30, 2023, Defendant filed a Motion for Summary Judgment (ECF No. 39), a Brief in Support (ECF No. 40), and a Concise Statement of Material Facts (ECF No. 41).  On March 1, 2023, Plaintiff filed a Response in Opposition (ECF No. 47), a Brief in Opposition (ECF No. 48), and a Concise Statement of Material Facts (ECF No. 49).  On March 24, 2023, following the Court granting Defendant's Motion for Leave to File a Reply Brief (ECF Nos. 50 and 51), Defendant filed a Reply Brief (ECF No. 52), Response to Plaintiff's Concise Statement of Material Facts (ECF No. 53), and a Supplement (ECF No. 54).  The matter is fully briefed and ripe for a disposition.

### III.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law[,]" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015), but such a fact may only be said to be in "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Marten v. Godwin*, 499 F.3d 290,

295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *see also SodexoMAGIC, LLC v. Drexel University*, 24 F.4th 183, 204 (3d Cir. 2022).

"The moving party bears the burden of [either] identifying particular portions of the record that establish the absence of a genuine issue of material fact[,]" *Santini*, 795 F.3d at 416, "or [showing] that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323. When the moving party has carried its burden under Rule 56(c), the burden shifts to the nonmoving party who must "go beyond the pleadings and by [his or] her own affidavits, . . . depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted); *see also Liberty Lobby, Inc.*, 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the nonmovant does not need to conclusively resolve the issue of material fact in its favor it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Industrial Co.*, 475 U.S. at 586-87). The nonmovant must set forth "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Liberty Lobby, Inc.*, 477 U.S. at 248 (quoting *First Nat .Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).

When determining a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences and resolve all doubts in its favor. *See Santini*, 795 F.3d at 416 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). However, at the summary judgment stage, the court is not to engage in credibility determinations or "determine the truth of the matter" but is instead "to determine whether there is

a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249; *see Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

## IV.   Analysis

Plaintiff contends that Defendant violated the ADA and PHRA by failing to accommodate his alleged disability, an allergy to cigarette smoke, and in doing so, effectively forced him to resign, constructively discharging him (ECF No. 1, ¶¶ 29-47).  Plaintiff brings this civil action under two theories of liability, failure to accommodate and discrimination, under the ADA and PHRA.

Defendant, in support of summary judgment, argues that Plaintiff does not suffer from a disability under the ADA or PHRA and that even if he did, Defendant reasonably accommodated his disability (ECF No. 40, p.3).  The Court will address these issues below.

### A.  Americans with Disabilities Act of 1990

"The purpose of the ADA is to provide civil rights protections for persons with disabilities." *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 606 (3d Cir. 1998) (citing H.R. Rep. No. 101-485, pt. 3, at 48 (1990) (internal quotation marks omitted)).  Therefore, under the ADA, covered entities are prohibited from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, the advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  "To state a claim under the ADA, a plaintiff must demonstrate: (1) [s/]he is a disabled person within the meaning of the ADA; (2) [s/]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s/]he has suffered an otherwise adverse employment decision as a result of discrimination." *Eshelman v. Patrick Industries, Inc.*,  961 F.3d 242, 245 (3d Cir. 2020) (quoting *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

**1.  Is Plaintiff a Disabled Person Within the Meaning of the ADA?**

An individual is disabled under the ADA if he or she: has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) . . . [is] regarded as having such an impairment."  42 U.S.C. § 12102 (1). For an impairment to be classified as a disability under the ADA, a major life activity must be substantially limited.  *See Penchishen v. Stroh Brewery Co.*, 932 F.Supp. 671, 674 (E.D. Pa 1996). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102 (2).  An impairment which substantially limits at least one major life activity may be considered a disability regardless of whether the impairment is episodic so long as it would substantially limit one or more major life activities when active.  42 U.S.C. § 12102 (4)(C-D).  Such a determination of whether an impairment substantially limits a major life activity is to be made without regard to the ameliorative effects of mitigating measures such as "reasonable accommodations or auxiliary aids or services; or learned behavioral or adaptive neurological modifications," eyeglasses or contact lenses excepted.  42 U.S.C. § 12102 (4)(E)(i)(I-III).

Typically, courts within the Third Circuit recognize two requirements for an allergy to constitute a disability under the ADA.

> Cases deciding whether an allergy is a disability hinge on whether the allergic reaction is avoidable or whether the employee's allergy substantially limits him from engaging in a major life activity. *See Slade v. Hershey Co.* No. 1:09CV00541, 2011 WL 3159164, at *4 (M.D. Pa. July 26, 2011) ("[C]ourts repeatedly find no disability where plaintiff suffers an avoidable allergic reaction."); *Gallagher v. Sunrise Assisted Living of Haverford*, 268 F.Supp.2d 436, 441 (E.D. Pa. 2003) (holding that plaintiff's allergy was not a disability because "[t]here is no evidence that [p]laintiff's allergies substantially restricts her in any major life activity.")

8

*Doe(s) v. Pittsburgh Regional Transit*, No. 2:22-cv-01736, 2023 WL 4867850, at *7 (W.D. Pa. July 31, 2023) (holding that plaintiff's allergy to the Covid vaccine "fit within the ADA's definition of impairment" and constituted a disability under the ADA because plaintiff demonstrated that a "physiological disorder or condition" affected his immune system, a major bodily function). However, the consideration of whether an allergic reaction is avoidable was predicated on the Supreme Court's holding in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999) which Congress explicitly repudiated when it amended the ADA. The ADA now provides that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102 (E)(i); *see* ADA Amendments Act of 2008 (b)(2) ("The purposes of this Act are--to reject the requirement enunciated by the Supreme Court in *Sutton* . . . and its companion cases that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures."). Thus, the lone consideration under the Amended ADA is whether a major life activity is substantially limited.

To constitute a disability, Plaintiff's impairment must substantially limit a major life activity. *See* 42 U.S.C. § 12102 (1). It is undisputed that at the time Plaintiff was employed by Defendant, he had no limitations when he was not suffering from the impacts of his alleged allergy to cigarette smoke. However, Plaintiff represents in his Declaration that:

> These migraines [which were a result of exposure to cigarette smoke] were severe, debilitating, and disabling. When I was suffering from a migraine episode at peak intensity, I was unable to do anything that involved light, sound, or movement. I was unable to walk, talk, hear, see, work, or drive. The only thing I could do was lie in my bed with all the lights turned off, no sound, and a pillow over my head until the episode passed peak intensity over the course of several hours.

(ECF No. 49-1, p. 73 at ¶ 3). Plaintiff contends that as a result of his allergy to cigarette smoke, he had episodes where his impairment caused him to be unable to walk, talk, hear, see, work, or

drive.  Congress included four of these activities--walking, hearing, seeing, and working--in 42 U.S.C. § 12102 (2) when it enumerated a non-exhaustive list of major life activities.  Because "an impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability," 42 U.S.C. § 12102 (4)(C), and Plaintiff has cited four enumerated major life activities as limited, the Court need not address whether talking and driving also constitute major life events.

In determining whether a major life activity has been substantially limited, "the term . . . [is to] be construed broadly, to the maximum extent permitted by the terms of the ADA." *Sowell v. Kelly Services, Inc.*, 139 F.Supp.3d 684, 698 (E.D. Pa. 2015) (citing 29 C.F.R. § 1630.2(j)(1)).  "On a motion for summary judgment, the court must determine whether plaintiff adduced sufficient evidence from which a jury *could reasonably infer* that plaintiff was substantially limited in his ability to perform a major life activity," not whether the jury is likely to infer or should infer. *Rocco v. Gordon Food Service*, 998 F.Supp.2d 422, 426 (W.D. Pa 2014) (emphasis added).  Based upon Plaintiff's Declaration and the record which indicates that, during his employment tenure with Defendant, Plaintiff was hospitalized to treat a severe migraine and high blood pressure caused by his alleged cigarette smoke allergy, a jury could reasonably infer that, when Plaintiff is under the effects of his alleged allergy, major life activities such as walking, hearing, seeing, and working are substantially limited.

Defendant contends that Paragraphs 1, 2, 3, and 4 of Plaintiff's Declaration contradict his testimony in his deposition and, as such, should not be considered by the Court in determining whether a genuine dispute of material fact exists (ECF No. 52, pp. 1-2).  Defendant contends that Plaintiff's representation in his Declaration that he "was unable to do anything that involved light, sound, or movement . . . [and] was unable to walk, talk, hear, see, work, or drive" (ECF No. 49-1,

p. 73 at ¶ 3) is contrary to Plaintiff's deposition as Plaintiff testified that "back when [he was] with [Defendant's company] . . . he could ride a bike, walk, go to the gym, care for himself, read, perform all routine daily functions, perform manual tasks, see, hear, eat, walk, stand, lift, reach, bend, speak, breath, learn, read, concentrate, think, interact with others and work" (ECF No. 52, p. 3).

There is, however, no conflict present. During his deposition, Plaintiff, in one instance, was asked regarding limitations if he could "work and breathe in the absence of cigarette smoke" and in other instances, was asked the same question but without the proviso of "in the absence of cigarette smoke" (ECF No. 49-1, Exhibit C at 16:11-13, 68:4-5). From the whole of the deposition record, and as explained in Plaintiff's Brief in Opposition (ECF No. 48, p. 6), it is apparent that Plaintiff, regardless of whether opposing counsel cabined questions about limitations to the "absence of cigarette smoke[,]" consistently represented that he was under no limitations in the absence of cigarette smoke, and consistently represented that when he is exposed to cigarette smoke, his blood pressure spikes causing a headache and bringing about labored breathing, loss of vision in both of his eyes, and negative effects from light and sound (ECF No. 49-1, Exhibit C at 67:3-10, 103:25-104:2). Thus, Plaintiff's representations during his deposition and those contained in Paragraph 3 of his Declaration are not in conflict. *See Videon Chevrolet, Inc. v. General Motors Corp.*, 992 F.2d 482, 488 (3d Cir. 1993) (evaluating the "thrust of the discussion" between the witness and opposing counsel during the deposition to prevent summary judgment over a "semantic misstep" that was not sufficient to constitute a concession of "one of the ultimate issues in the case"); *Bumbarger v. New Enter. Stone and Lime Co., Inc.*, 170 F.Supp.3d 801, 819 (W.D. Pa. 2016) (holding that "if independent evidence in the record bolsters an otherwise questionable affidavit, courts within the Third Circuit will generally not disregard the affidavit");

*Newland v. Norfolk Southern Railway Company*, No. 3:18-22, 2022 WL 4465463, at \*7 (W.D. Pa Sept. 26, 2022) (examining the entirety of a deposition transcript in order to determine whether a jury could reasonably infer that a deposition witness misspoke when providing seemingly contradictory statements but one such statement more fully detailed the events in question).

In his Declaration, Plaintiff, in pertinent part, stated that he "regularly suffered from migraines[,]" "multiple times per month, at least once per week" while working for Defendant and that those "migraines were severe, debilitating and disabling" (ECF No. 49-1, p. 73 at ¶¶ 1, 3-4). Defendant contends that "during his deposition, however, [Plaintiff] testified he only experienced a severe headache 'once'" (ECF No. 52, p. 2). This is not indicated by the full record nor by the portion of the record cited by Defendant. In discussing the symptoms associated with his disability in the portion of the record cited by Defendant, Plaintiff enumerated the symptoms' progression, stating that "when I'm around cigarette smoke, . . . it causes massive headaches, which jacks my blood pressure like 300 or 200. Once my blood pressure goes up, then I have like labored breathing stuff" (ECF No. 49-1, Exhibit C at 67:3-8). When asked how often this happened while he worked at Defendant's company, Plaintiff responded, "the severeness of that was once, but I mean, I got headaches on a regular basis whenever I was in a truck that someone was smoking" (ECF No. 49-1, Exhibit C at 67:24-68:1). As such, the record cited to by Defendant, clearly bears out that Plaintiff indicated that he had one such headache which caused his blood pressure to reach 200-300 and required emergency room treatment; he did not, however, plainly state that he only had one severe headache. Thus, there is no conflict between paragraph 1, 3, and 4 of Plaintiff's Declaration and his deposition.

Additionally, Defendant raises the issue that in Plaintiff's deposition, he was asked if he had told anyone during orientation for employment with Defendant that he had a disability and Plaintiff

responded, stating "I didn't really have a disability" (ECF No 49-1, Exhibit C at 55:17).   This statement, in and of itself, is not sufficient to constitute a concession of the threshold issue of the case when Plaintiff, in the same deposition, continued to allege facts sufficient that a jury could reasonably infer that he was disabled under the ADA.   "To hold that such a semantic misstep from a witness untrained in the law effectively ends his case would only bring back the sporting theory of justice and open the door to sharp practices by counsel." *Videon Chevrolet, Inc.*, 992 F.2d at 488.

Thus, viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences and resolving all doubts in its favor, *Santini*, 795 F.3d at 416, Plaintiff has demonstrated that a genuine dispute of material fact exists regarding whether he is disabled under the ADA such that a jury *could* reasonably infer that Plaintiff was substantially limited in his ability to perform a major life activity.

### i.    Was Plaintiff Regarded as Disabled Under the ADA?

In Defendant's Reply Brief in Support of its Motion for Summary Judgment (ECF No. 52), Defendant highlights the fact that in the Brief in Opposition to Defendant's Motion for Summary Judgment, Plaintiff raises, for the first time, the argument that he was regarded by Defendant as having a disability (ECF No. 48, pp. 4-5).   Because this claim was not raised in Plaintiff's Complaint (ECF No. 1) or earlier filings, the court will not consider this claim.   "[A] party is not permitted to raise new claims in opposition to a Rule 56 motion." *Bakare v. Pinnacle Health Hospitals, Inc.*, 469 F.Supp.2d 272, 296 (M.D. Pa. 2006) (citing *Laurie v. Nat'l Passenger R.R. Corp.*, 105 Fed.Appx. 387, 392-93 (3d Cir. 2004); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499 at n. 1 (3d Cir. 1997); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 641-42 (3d Cir. 1993); *Jefferies v. Ameriquest Mortg. Co.*, 543 F.Supp.2d 368, 385 (E.D. Pa 2008).

**2. Is Plaintiff Otherwise Qualified to Perform the Essential Functions of the Job, With or Without Reasonable Accommodations by the Employer?**

The analysis of whether an individual is qualified to perform the essential functions of the job may be divided into two parts: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position . . . and (2) whether the individual with or without reasonable accommodation, can perform the essential functions of that position." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006). The determination of whether the individual is qualified is made at the time of the employment decision, and not at the time of the lawsuit. *See id.*

Here, it is not in dispute whether Plaintiff was qualified to perform the essential function of the job with or without reasonable accommodations. The record indicates that Plaintiff had the requisite skill, experience, education, and other job-related requirements of his position such that Defendant hired Plaintiff and maintained his employment until Plaintiff resigned. Therefore, Plaintiff was qualified to perform the essential function of the position with or without a reasonable accommodation as indicated by his continued employment and the fact that he was not terminated for cause but resigned due to the issue of cigarette smoke in the trucks. Thus, a jury could reasonably infer that Plaintiff was qualified to perform the essential functions of the job.

**3. Has Plaintiff Suffered an Otherwise Adverse Employment Decision as a Result of Discrimination?**

"An adverse employment action is one which alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities or adversely affects his or her status as an employee." *Speer v. Norfolk Southern Ry. Corp.*, 121 Fed.Appx. 475, 477 (3d Cir. 2005). Such an adverse employment decision must be a result of

discrimination to state a claim under the ADA.  *See Speer*, 121 Fed.Appx. at 478 (granting summary judgment to the defendant as the plaintiff was not released from his various positions because of his alleged disability but instead for cause, including "his lack of seniority[,]" a lack of "the proper CDL endorsement[,]" and because he failed to report for duty).  In 42 U.S.C. § 12112 (b)(5)(A), Congress explains that the prohibition of discrimination against a qualified individual includes failing to make reasonable accommodations.  As such, "the adverse employment decisions barred by the ADA include not only adverse actions motivated by prejudice and fear of disabilities, but also . . . failing to make reasonable accommodations for a plaintiff's disabilities." *Mercer v. Southeastern Pennsylvania Transit Authority*, 26 F.Supp.3d 432, 440 (E.D. Pa 2014) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)) (internal quotation marks omitted).

Plaintiff raises two claims in Count I, failure to accommodate and discrimination in violation of the ADA.  However, Plaintiff does not advance his claim of discrimination separate from his claim of a failure to accommodate.  Instead, Plaintiff relies solely on the argument that because "Defendant did not provide any type of accommodation, which forced Plaintiff to have constant exposure to cigarette smoke inside the company vehicles[,]" "he was forced to resign as he could no longer work without the reasonable accommodation" (ECF No. 1, ¶¶. 33, 35).  In this way, Plaintiff alleges that in failing to accommodate him, Defendant permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign, rendering his resignation a constructive discharge as well as an adverse employment action.  *See Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).[2]  Thus, Plaintiff's ADA claim rests upon whether

---

[2] Pennsylvania and the Third Circuit's definitions of constructive discharge are coterminous. *See Kegerise v. Delgrande*, 646 Pa. 180,190 (Pa. 2018) ("A constructive discharge occurs only where the employer makes working conditions so intolerable that the employee is forced to resign.").

Defendant failed to accommodate him. If Defendant provided a reasonable accommodation, then Plaintiff's allegation of an adverse employment action in the form of a constructive discharge is without merit. However, if there is a genuine dispute of material fact as to whether Defendant failed to accommodate Plaintiff and a jury could reasonably infer that the employer, in doing so, permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign, constructively discharging Plaintiff, Plaintiff's claim may survive summary judgment. *Id.*

### i.      Did Defendant Fail to Accommodate Plaintiff's Disability?

"A plaintiff bringing an ADA failure-to-accommodate claim must establish: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated" but for the employer's lack of good faith. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Memorial Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)); *see also Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010) *Taylor*, 184 F.3d at 319-20; *Reyer v. Saint Francis Country House*, 243 F.Supp.3d 573, 595 (E.D. Pa. 2017).

### 1. Was Plaintiff Disabled and did Defendant Know?

As indicated above, a jury could reasonably infer that Plaintiff suffers from a disability under the ADA, and the record is clear that Defendant was aware of the impairment which could constitute a disability under the ADA. While Plaintiff did not notify Defendant of his impairment prior to his first day of work, he did inform the company that he suffered from migraines, that they were triggered by cigarette smoke, and that he was exposed to the smell of cigarette smoke in company vehicles (ECF No. 49-1, Exhibit B at 34:19-35:1). While the time of the initial

16

notification is unknown, Plaintiff notified his supervisors, Greg Shawver and Dominic Fredo, as well as Chip Castello, who was Director of Safety at the time, of his allergy to cigarette smoke through means which may have included in person notification, text messaging, phone call, email, or letter after Plaintiff began working in March 2019 and before his ultimate resignation (ECF No. 49-1, Exhibit B at 68:8-69:20, 73:21-74:1; ECF No. 49, ¶ 16).   In response to being notified of Plaintiff's allergy, Defendant "arrang[ed] for him to have a truck in which no one had smoked[,] . . . strengthened its smoking policy, . . . formally designated trucks as nonsmoking trucks[,] . . . [and] put signs on trucks to clearly indicate which trucks were nonsmoking trucks" (ECF No. 53, ¶¶ 58, 60).   Thus, a jury could reasonably infer that Plaintiff was disabled and Defendant knew.

### 2.   Did Plaintiff Request an Accommodation or Assistance?

To satisfy the requirement that the plaintiff requested an accommodation or assistance, an employee need not have identified and requested a specific reasonable accommodation but must simply demonstrate that an accommodation for the disability was requested.   *See Armstrong*, 438 F.3d at 246, 248.   This request may be made either through "direct communication or other appropriate means" so long as the "employee make[s] clear that . . . [he or she] wants assistance for his or her disability." *Conneen v. MBNA America Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003) (quoting *Jones v. United Parcel Service*, 214 F.3d 402, 408 (3d Cir. 2000)).   "The employer must have enough information to know of 'both the disability and desire for an accommodation' or circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation."   *Colwell*, 602 F.3d at 506 (quoting *Coneen*, 334 F.3d  at 332 ).

There is no dispute as to whether Plaintiff requested an accommodation or assistance for his alleged disability.   Plaintiff does not demonstrate in the record that he explicitly requested an

accommodation *for his disability*, but instead introduced evidence that he sent Greg Shawver a text message wherein he asked that the "situation" of individuals smoking in company vehicles shared by more than one employee be corrected and explained that, per his understanding of Pennsylvania's Clean Indoor Air Act, such activity is illegal (ECF No. 49-1, p. 26, C. Smith_187). However, Defendant clearly understood Plaintiff's varied complaints as requesting an accommodation for his alleged disability. This was made clear when Defendant explained that it "made no attempt to verify the alleged cigarette smoke allergy but took [Plaintiff] at his word and took steps to *accommodate his alleged allergy*," (ECF No. 53, ¶ 42) (emphasis added) or, as explained another way, to "*accommodate his complaints*." (*Id.*, ¶ 58) (emphasis added). Thus, Defendant was aware that Plaintiff was requesting an accommodation for his alleged disability either because there was evidence from which a request for accommodation could be inferred, *Jones*, 214 F.3d at 408, or because Defendant knew of the disability and the circumstances were at least sufficient to put Defendant on notice that Plaintiff wanted assistance with his disability.

### 3. Did Defendant Fail Make a Good Faith Effort to Assist?

To make a good faith effort to assist an individual who requires an accommodation or assistance, the employer must "engage the employee in the interactive process of finding accommodations," but only "if an employer has adequate notice of an employee's disability, and the employee requests accommodations for the disability, [does] it become . . . the responsibility of the employer to engage" in that process. *Armstrong*, 438 F.3d at 246 (quoting *Taylor*, 184 F.3d at 319) (internal quotation marks omitted).

While maintaining that, legally, Plaintiff's allergy did not constitute a disability, Defendant "made no attempt to verify the alleged cigarette smoke allergy but took [Plaintiff] at his word and took steps to accommodate his alleged allergy" (ECF No. 53, ¶ 42). To accommodate Plaintiff,

Defendant "arrang[ed] for him to have a truck in which no one had smoked[,] . . . strengthened its smoking policy, . . . formally designated trucks as nonsmoking trucks[,] . . . [and] put signs on trucks to clearly indicate which trucks were nonsmoking trucks" (ECF No. 53, ¶¶ 58, 60). These steps were taken in conjunction with communication between Plaintiff and representatives from Defendant's company.

Plaintiff stated during his deposition that Chip Castello "hit him up" saying "you're not supposed to be in a smoking truck" after Chip had been informed by another individual that Plaintiff's non-smoking truck was gone and that "they had put [him] in a smoking truck" (ECF No. 49-1, Exhibit C at 74:25-75:4). Additionally, during Chip Castello's deposition, Chip indicated that the company conducted an investigation after Plaintiff contacted him and alleged that another driver had smoked in the non-smoking truck to which he was assigned and alleging that the cigarette smell was causing health issues, resulting in him being hospitalized on one occasion. In response to discovering that an individual had smoked in the non-smoking truck Plaintiff drove, Defendant forbid any other driver to drive Plaintiff's nonsmoking truck and later reinforced its policy "to ensure that smokers only smoked in trucks designated as smoking trucks" (ECF No. 49-1, Exhibit B at 44:10-25, 47:20-25).

Thus, it is clear that Defendant engaged in an interactive process with Plaintiff to find a reasonable accommodation when, in response to Plaintiff's complaints and requests, it: enacted a new smoking protocol, designated non-smoking trucks, conducted an investigation after Plaintiff made a complaint of smoking in his nonsmoking truck, assigned Plaintiff his own non-smoking truck, and also contacted him regarding the improper placement of him in a smoking truck. Viewing the facts in the light most favorable to Plaintiff as the non-moving party, no jury could

reasonably infer that Defendant failed to make a good faith effort to assist.  As such, the Court finds no evidence of discrimination on the part of Defendant.

### 4.  Could Plaintiff have been Reasonably Accommodated but for the Employer's Lack of Good Faith?

Because, as discussed above, Plaintiff failed to make a showing sufficient to establish a genuine dispute that Defendant did not make a good faith effort to assist, a jury could not reasonably find that Defendant lacked good faith. Thus, if Plaintiff was not reasonably accommodated, it could not be a result of Defendant lacking good faith.  In this way, Plaintiff failed to make a showing sufficient to establish the existence of an element essential to his case, and on which the Plaintiff would have borne the burden of proof at trial. *See Marten*, 499 F.3d at 295 (quoting *Celotex Corp.*, 477 U.S. at 322-23).

### ii.  Was Plaintiff Constructively Discharged?

To determine whether a constructive discharge occurred, the court must determine whether a reasonable jury could find that the employer knowingly permitted conditions so unpleasant, difficult, or intolerable that a reasonable person subject to them would have felt compelled resign. *See Duffy*, 265 F.3d at 167; *Clegg v. Falcon Plastics, Inc.*, 174 Fed.Appx. 18, 27 (3d Cir. 2006); *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984).  Such conditions are "assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt *compelled* to resign--that is, whether [he] would have had no choice but to resign." *Clegg*, 174 Fed.Appx. at 27 (quoting *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1988)).

Plaintiff's constructive discharge claim was premised upon Defendant's alleged failure to accommodate.  Plaintiff contended that in failing to accommodate his disability, Defendant permitted conditions so unpleasant, difficult, or intolerable that a reasonable person subject to them

would have been compelled, or had no choice, but to resign.  However, as discussed above, Plaintiff did not make a showing sufficient to establish that Defendant failed to provide a reasonable accommodation.  Therefore, a jury could neither reasonably infer that Defendant failed to accommodate Plaintiff nor reasonably find that Defendant permitted conditions sufficient to compel a reasonable person to resign.

## V.    Pennsylvania Human Relations Act

The ADA standard and the PHRA standard were historically analyzed coextensively.  *See Castellani v. Bucks County Municipality*, 351 Fed.Appx. 774, 777 (3d Cir. 2009).  As such, "in order to make out a prima facie case of disability discrimination under the ADA and PHRA, a plaintiff [had to] establish that s/he (1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action because of that disability." *Buskirk v. Apollo Metals*, 307 F.3d 160 (3d Cir. 2002) (citing *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)) (internal quotation marks omitted).  However, after Congress passed the ADA Amendments Act of 2008 to broaden the ADA's definition of "disability," the Pennsylvania legislature did not enact any explicit concomitant enlargement regarding the PHRA.  *See Gucker*, 212 F.Supp.3d at 559 (citing *Bielich v. Johnson & Johnson, Inc.*, 6 F.Supp.3d 589, 602 (W.D. Pa. 2014); *Sowell*, 139 F.Supp.3d at 704.  In light of this, the Court finds it highly likely that though the elements required to make out a prima facie case of disability remain the same under either the ADA or PHRA, the two are no longer coextensive in the interpretation and application of the disability prong; "[t]he ADA now requires "a much less searching analysis" of the disability prong, *Gucker*, 212 F.Supp.3d at 559, but "the disability prong of discrimination analysis under the PHRA should be analyzed in the same manner as" ADA claims prior to the Amendments Act of 2008. *Sowell*, 139 F.Supp.3d at 704.

Prior to the Amendments Act of 2008, "courts repeatedly f[ound] no disability where [the] plaintiff suffer[ed] an avoidable allergic reaction." *Slade*, No. 1:09CV00541, 2011 WL 3159164 at *4 (M.D. Pa. July 26, 2011). This was, in large part a result of the Supreme Court's holding that any mitigating measures must be considered to the extent that "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently substantially limits a major life activity" and therefore does not qualify as a disabled under the pre-amendment ADA. *Sutton*, 527 U.S. at 482-483 (internal quotation marks omitted).

Here, Plaintiff clearly indicated that he was under no physical limitations in the absence of cigarette smoke, and that, only when exposed to cigarette smoke does his blood pressure spike causing a headache and bringing about labored breathing, loss of vision in both of his eyes, and negative effects from light and sound (ECF No. 48, p. 6; ECF No. 49-1, Exhibit C at 67:3-10, 103:25-104:2). As such, Plaintiff suffered from an avoidable allergic reaction. While it may be contended that contact with cigarette smoke was unavoidable as a nature of Plaintiff's job and the prevalence of smoking in the trucking industry, other mitigating measures were available to Plaintiff and must be considered. Plaintiff was assigned to a non-smoking truck (ECF No. 49-1, Exhibit B at 44:22-25) and was informed that if the non-smoking truck was not available due to the rotation of the drivers and shifts, he was permitted to decline both working his scheduled shift and the corresponding pay (ECF No. 41, ¶ 28). Thus, measures were available to Plaintiff such that his allergy would not have substantially limited a major life activity and therefore no reasonable jury could infer that his allergy would constitute a disability under the pre-amendment ADA standard applicable to PHRA claims. *See Sutton*, 527 U.S. at 482-483.

The remaining prima facie elements of ADA and PHRA claims are "substantively identical[,]" even after the Amendments Act of 2008. *Sowell*, 139 F. Supp.3d at 704. As such, even if Plaintiff

would qualify as disabled under the PHRA, his claim would fail in the same manner under the PHRA as it did under the ADA.  Thus, the Court finds no evidence of discrimination on the part of Defendant under either the ADA or PHRA.

**VI.      Conclusion**

The Court finds that there are no issues of material fact precluding summary judgment.  While Plaintiff established a genuine dispute as to whether he has a recognized disability, Plaintiff has not established any issue of material fact as to whether Defendant discriminated against him or made a good faith effort to establish a reasonable accommodation for his disability.  As such, viewing the facts in the light most favorable to Plaintiff, as the nonmoving party, and drawing all reasonable inferences and resolving all doubts in Plaintiff's favor, Defendant's Motion for Summary Judgment (ECF No. 39) will be GRANTED.  An appropriate order will follow.

Date: September 29, 2023

Stephanie L. Haines
United States District Judge